IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KENNETH PHILLIP JACKSON, FX-4662,  )
     Petitioner,  )
       )
        v.  )  2:15-cv-871
       )
TRAVOR A. WINGARD, et al.,  )
     Respondents.  )

MEMORANDUM

Mitchell, M.J.:

     Kenneth Phillip Jackson, an inmate at the State Correctional Institution at Somerset has presented a petition for a writ of habeas corpus. For the reasons set forth below, the petition will be dismissed and because reasonable jurists could not conclude that a basis to appeal exists, a certificate of appealability will be denied.

     Jackson is presently serving a 32 ½ to 65 year sentence imposed following his conviction, upon a plea of guilty to charges of third degree murder, abuse of a corpse, forgery, theft by deception, and identity theft at Nos. CC 200201068, and 200202589 in the Court of Common Pleas of Allegheny County, Pennsylvania.[1] Following a denial of a motion to withdraw his plea, petitioner was sentenced on July 19, 2004.[2]

     An appeal was taken to the Superior Court in which the sole question was:

> Whether the trial court abused its discretion by denying the appellant's motion to withdraw guilty plea where the appellant both asserted his innocence and made said motion before sentencing?[3]

Agreeing with the trial court's October 15, 2005 opinion, on June 23, 2006 the judgment was affirmed.[4] Allowance of appeal was denied by the Pennsylvania Supreme Court on January 3, 2007.[5]

---

[1] See: Petition and p.2 of the answer. Charges filed at CC 200203968 were withdrawn as part of the plea agreement.
[2] See: Petition at ¶2.
[3] See: Appendix p.77.
[4] Id. p.118.
[5] Id. p.135.

A post-conviction petition was filed on May 29, 2007.[6] On January 4, 2014 relief was denied.[7] An appeal to the Superior Court was filed in which the issues presented were:

1. Whether the PCRA court erred in re-imposing a sentence which is illegal as it violates the terms of the plea agreement reached by the parties and expressly accepted by the trial court during the original plea proceeding?

2. Whether the PCRA court erred in imposing a sentence which is an abuse of discretion and/or manifestly excessive because the re-imposed sentences on five (5) counts were jurisdictional maximums run consecutively, were also run consecutively to the third degree murder statutory maximum of twenty (20) to forty (40) years, and were otherwise excessive?

3. Whether the PCRA court erred in finding that trial counsel was effective during voir dire, trial, plea proceedings and original sentencing despite repeatedly stating that he was unable to provide effective representation?

4. Whether the PCRA court erred when it upheld its refusal to appoint counsel to represent Mr. Jackson at the original sentencing?[8]

On January 9, 2015, the denial of post-conviction relief was affirmed and on June 23, 2015, allowance of appeal was denied by the Pennsylvania Supreme Court.[9]

In the instant petition received on July 6, 2015, Jackson contends he is entitled to relief on the following grounds:

1. Ineffective assistance of counsel. 6th, 5th, 8th, and 14th amendment violations. Failed to subject the prosecution's case to meaningful adversarial testing. All proceedings support finding [that counsel] could not ethically represent Mr. Jackson.
2. Layered claims of ineffective assistance of counsel.
3. Trial counsel not true advocate counsel. Attorney … gave false information to plaintiff about plea agreement. Attorney … told plaintiff he did not have plaintiff's best interest at heart nor in his heart…
4. Illegal sentence based on violation of plea agreement.
5. Violation of plea agreement.
6. [Denied counsel when he sought to withdraw his guilty plea].
7. Denied counsel at sentencing hearing.
8. Due process violation for illegal sentence based on plea agreement.

---

[6] Id. p.136.
[7] Id. pp.218-222.
[8] Id. p.238.
[9] Id. pp.311-325, 352.

The background to this prosecution is set forth in the January 9, 2015 Memorandum of the Superior Court:

> Preliminarily, we observe that the PCRA court vacated appellant's original sentence and then re-imposed an identical sentence. Appellant treats this appeal as a direct appeal from a new judgment of sentence. We do not regard it as such. The court's purpose in entering the new sentence was simply to make an administrative correction to the original sentence which had transposed the criminal information count numbers for one count of forgery and one count of theft by deception.[1]
>
> _____
>
> > 1.The transposition and its correction upon collateral review were of no moment because identical sentences were imposed at each count.
>
> We note that the trial court may always correct obvious errors in its sentence, even after the statutorily imposed 30-day modification limit has expired …
>
> Thus, the "new" sentence was merely a ministerial correction of an obvious error in the original sentence. By simply correcting the sentence and taking no further action, the PCRA court effectively denied all of appellant's PCRA claims. Consequently, we regard this appeal as being taken from the order of February 27, 2012, operating as a denial of the PCRA petition, rather than operating as from a new judgment of sentence.
>
> The charges against appellant arose following the December 18, 2001 discovery of the remains of appellant's uncle in a garage behind appellant's house. The cause of death was blunt force injury, and appellant subsequently confessed to the homicide. Appellant also cashed his uncle's Social Security checks and used his uncle's identification papers in doing so. ..
>
> During appellant's jury trial, appellant and the Commonwealth came to a plea agreement. Appellant subsequently pleaded guilty to third degree murder, one count of abuse of a corpse, two counts of theft by deception, two counts of forgery, and one count of identity theft. The Commonwealth agreed to *nolle pros* all other changes. The plea agreement also required that the sentence that would be imposed would be within the Sentencing Guidelines…[10]

A federal habeas corpus court reviewing a conviction upon a plea of guilty must determine whether or not the plea was knowingly, intelligently and voluntarily entered. Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005).

_____

[10] Id. pp.311-313.

Even before jury selection commenced, defense counsel moved to withdraw. Specifically, counsel stated:

> Your Honor, I'm here to once again beg the Court to permit me [to] withdraw from this case. I cannot continue an attorney/client relationship with this man.
>
> He berates me, insults me. He tells me I'm in bed with the DA, tells me I'm selling him out. He just makes nasty comments towards me.
>
> I cannot ethically represent this man because at this point, I don't have his best interest at heart in my heart.
>
> I have never done this before [in] almost 30 years, Judge. I don't know what he's doing, but I cannot continue to represent this man. I can't do it…
>
> THE COURT: Mr. Jackson, you started out with Attorney Foreman from the Public Defender's Office. You didn't like Mr. Foreman. Didn't get along with Mr. Foreman. And for a short period of time the Public Defender appointed Mr. Sheets to represent you. Then you didn't like Mr. Sheets…
>
> THE COURT: Problem was, Mr. Jackson, you went off and decided you were going to join into the American Civil Liberties Union suit or injunction action involving the Allegheny County Public Defenders' Office, which immediately made all members of the Public Defenders' Office, made them defendants, essentially with you as a witness.
>> And, therefore, they were in the position of conflict of interest, so they were conflicted out.
>> So I appointed, as I have already expressed to you, I'm amazed he took the appointment, Mr. Thomassey, the best lawyer around here.
>> So you['ve] got two choices. Either have Mr. Thomassey represent you – actually you have three. You have – another lawyer walks through the door, willing to pick up this case and represent you right now, Mr. Thomassey can represent you, or you represent yourself.
>
>> THE DEFENDANT: Well, I never fired Mr. Thomassey.
>> THE COURT: He wants to withdraw, doesn't want to work for you.
>> THE DEFENDANT: That's on Mr. Thomassey. That has nothing to do with me, and I'm not a fool so I'm not going to represent myself.
>> THE COURT: I think you're doing everything you can, Mr. Jackson, to --
>> THE DEFENDANT: I'm picking my jury…(TT.42-46)

The court then reviewed the various charges with the petitioner, postponed jury selection and advised the petitioner that when court commenced in the morning, he could either cooperate with his attorney or represent himself (TT.47-51). The next morning jury selection commenced with Mr. Thomassey representing the petitioner.

On April 22, 2004, after testimony had commenced, Mr. Thomassey informed the court that a plea agreement had been reached (TT.365) although he clearly represented that there was no agreement as to sentencing (TT.367).

At the time the petitioner changed his plea, he was placed under oath and testified that he was 39 years old, had a tenth grade education and could read and write (T.368); that he acknowledged that he was pleading to third degree murder, abuse of a corpse, access device fraud, theft by deception and forgery (TT.367); that he understood the elements of the charges and penalties as advised by the court (TT.370-374); that he understood that any sentence imposed would be within the guidelines (TT.372); that he had answered the court's questions truthfully (TT.374); that his attorney had explained all of his rights including a jury trial, the burden of proof, the presumption of innocence and not having to testify (TT.374-376); that he understood that he was giving up his right to proceed further with trial and understood that his right to appeal would be limited to the issue of the voluntariness of his plea (TT.376-377); that he had not consumed any alcohol or drugs in the prior twenty-four hours (TT.377); that he had no mental or physical disabilities (TT.377); that no promises other than the plea agreement had been made (TT.377); that he understood that in order to withdraw his guilty plea he would have to demonstrate that it was not voluntary (TT.378); that he had no questions as "my attorney explained everything to me" (TT.378); that he understood the penalties that could be imposed (TT.378); that his plea was voluntary because he indeed was guilty (TT.378-379, 391); that no coercion had been employed to induce his plea (TT. 379) and that he wanted his counsel to continue to represent him (TT.392-393). The prosecutor also summarized the evidence that would be presented if the trial proceeded (TT.380-388).

Thus, the record is devoid of any bases which would support a conclusion that the plea was not knowingly, intelligently and voluntarily entered with the assistance of counsel, and this claim is meritless.

Petitioner also contends that he should have been permitted to withdraw his guilty plea. "On collateral review, a court may only vacate a guilty plea where the petitioner can establish that the plea was not made knowingly and voluntarily…" Ferrer v. Superintendent, 628 F.Supp.294, 304 (N.D.N.Y. 2008).

In its opinion, the trial court set forth its reasons for denying Jackson's motion to withdraw his guilty plea:

The defendant entered his plea of guilty while under oath. He admitted to the crimes to which the plea was entered. He listened to a summary of the evidence that the Commonwealth would have presented had the matter continued in trial, he also had heard a substantial portion of that evidence presented in Court during his trial. He admitted that the facts as represented by the Commonwealth at the time of the plea as presented during the trial were true. He admitted to having committed the acts that constituted the crimes to which he was pleading guilty and he admitted to his guilt of those crimes. Given the qualified nature of his assertion of innocence as set forth in his two withdrawal request, coupled with the circumstances of the plea, this Court found that the defendant's assertion of innocence were completely incredible and made only in an attempt to continue his practice of delaying final disposition of this matter.

In addition to the lack of credibility to the assertion of innocence, this Court denied the Motion because of the substantial prejudice the Commonwealth would have suffered had the matter proceeded to trial… [T]he defendant entered his plea knowing that he could not withdraw it if the Commonwealth's ability to prosecute him would be substantially impaired. He was also aware at the time he entered his plea of the nature and extent of the Commonwealth's evidence against him, having heard a considerable portion of that evidence during his aborted trial.

The Commonwealth's assertion as to the prejudice it would have suffered if the defendant were permitted to withdraw his plea were (sic.) not contradicted. Those claims were well established on the record. The defendant did cause substantial delay in having this matter brought to conclusion. The Court must recognize and give weight to the difficulty the Commonwealth faced in securing the attendance of witnesses again and again as the matter was delayed… The Commonwealth asserted that it would not be able to secure the attendance of between five and eight of its witnesses if this matter were again scheduled for trial…

This defendant complained about the jury panel and complained about his attorney. Both series of complaint were without any basis in fact. His jury was properly selected and he was properly represented by counsel. It certainly seems to this Court that the defendant sought to use the entry and later withdrawal of his guilty plea as a means of obtaining a new jury and a new attorney. This Court properly refused to permit him to do so.[11]

This conclusion was adopted by the Superior Court[12] and clearly contradicts any conclusion that the plea was not knowingly and voluntarily entered.

The remainder of petitioner's claims are that he was denied the effective assistance of counsel. Under the Sixth Amendment a defendant is entitled to the assistance of counsel at all critical stages of the prosecution. Iowa v. Tovar, 541 U.S. 77 (2004).

[11] Id. at.62-65.
[12] Id. at 118.

At the sentencing hearing held on July 19, 2004 ("SH") it appeared that Jackson apparently fired his fourth attorney (SH 3) and proclaimed his innocence (SH 4,7,10). However, Mr. Thomassey was present. On the record, the court stated,

> Mr. Jackson, I can only tell you that in 16 years on the bench, I have never seen an individual intentionally obstruct the requirements of the process of a just and fair hearing as you have.
>
> I in fact had you examined by the Behavior Clinic, and they sent you to Mayview to determine if you had any mental illness. Mayview says that the diagnosis is one of malingering. There is a very high suspicion that the patient's symptomatology is intentionally produced. The patient has a high-risk factor from malingering, including discrepancies between presenting significant memory deficits and his actual functioning on the ward. He has very poor cooperation with diagnostic evaluations or compliance with any kind of treatment.
>
> That's exactly the same thing that your lawyers have said about you.
>
> I am satisfied that the Commonwealth is significantly prejudiced, and I am further satisfied that the defendant entered a knowing, intelligent and voluntary plea of guilty to the charge of third degree murder. And accordingly, the motion to withdraw the guilty plea is denied (SH 11-12).
>
> As the sentencing hearing progressed, the following exchange occurred:
>
> THE COURT: It's apparent to the court, Mr. Jackson, you don't want Mr. Thomassey to represent you anymore. And Mr. Thomassey doesn't want to represent you anymore. Is that accurate?
>
> MR. JACKSON: Yes.
>
> THE COURT: Okay. Then you will represent yourself. I'm not going to appoint you yet another lawyer… You have elected by reason of your recalcitrance, your abuse of counsel, to represent yourself… (SH 15 -17).

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466

U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

From the record here, it is readily apparent that Jackson was not denied the assistance of counsel at any time, but instead rejected that assistance. Rather, the record demonstrates that petitioner was merely attempting to manipulate the judicial system and as a result of his failure he now alleges that he was denied the assistance of counsel. In United States v. Thomas, 357 F.3d 357, 362 (3d Cir. 2004), the Court wrote:

> A court may find that a defendant has forfeited his or her right to counsel after having engaged in "extremely dilatory conduct" or "extremely serious misconduct." Forfeiture can be found "regardless of whether the defendant has been warned about engaging in misconduct, and regardless of whether the defendant has been advised of the risks of proceeding pro se." (citing to United State v. Goldberg, 67 F.3d 1092 (3d Cir. 1995).

While sentencing is a critical stage at which the assistance of counsel is necessary, there is no doubt that at some point the court need not jump through any further hoops to attempt to conduct proceedings with an obstreperous defendant. Such is the case here. Both appointed counsel and the trial court had extensive criminal practice experience and both expressed their utter frustration in dealing with the petitioner. As a result Jackson comes before this Court and contends they violated his Sixth Amendment rights. To the contrary, the state courts' conclusions that by his conduct the petitioner waived his right to further appointed counsel is appropriate under federal law. In Thomas, the Court wrote, "although waiver most commonly is effected by an "affirmative, verbal request" to proceed pro se, waiver also may be effected by conduct…" 357 F.3d at 362.

Thus, these ineffective assistance allegations likewise do not provide a basis for relief.

Because there is no showing that the petitioner's conviction was secured in any manner contrary to federal law as determined by the Supreme Court nor involved any improper application of that law, he is not entitled to relief here. For this reason, the petition of Kenneth Phillip Jackson for a writ of habeas corpus will be denied, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.